CAROLYN ORMSBY *v.* EMIL FRANKEL,
COMMISSIONER OF TRANSPORTATION
(SC 16187)

Borden, Katz, Palmer, Vertefeuille and Lager, Js.

Argued November 3, 2000—officially released April 17, 2001

*Louis B. Blumenfeld,* with whom were *Paul T. Nowo-sadko* and, on the brief, *William J. Scully,* for the appellant (defendant).

*Kathryn Calibey*, with whom were *Michael Jainchill* and *Douglas Hammond*, for the appellee (plaintiff).

*Opinion*

BORDEN, J. The issues in this certified appeal involve: (1) the admissibility of recurring icing conditions and a prior accident to prove constructive notice under General Statutes § 13a-144,[1] the state defective

[1] General Statutes § 13a-144 provides: "Any person injured in person or property through the neglect or default of the state or any of its employees by means of any defective highway, bridge or sidewalk which it is the duty of the Commissioner of Transportation to keep in repair, or by reason of the lack of any railing or fence on the side of such bridge or part of such road which may be raised above the adjoining ground so as to be unsafe for travel or, in case of the death of any person by reason of any such neglect or default, the executor or administrator of such person, may bring a civil action to recover damages sustained thereby against the commissioner in the Superior Court. No such action shall be brought except within two years from the date of such injury, nor unless notice of such injury and a general description of the same and of the cause thereof and of the time and place of its occurrence has been given in writing within ninety days thereafter to the commissioner. Such action shall be tried to the court or jury, and such portion of the amount of the judgment rendered therein as exceeds any amount paid to the plaintiff prior thereto under insurance liability policies held by the state shall, upon the filing with the Comptroller of a certified copy of such judgment, be paid by the state out of the appropriation for the commissioner for repair of highways; but no costs or judgment fee in any such action shall be taxed against the defendant. This section shall not be construed so as to relieve any contractor or other person, through whose neglect or default any such injury may have occurred, from liability to the state; and, upon payment by the Comptroller of any judgment rendered under the provisions of this section, the state shall be subrogated to the rights of such injured person to recover from any such contractor or other person an amount equal to the judgment it has so paid. The commissioner, with the approval of the Attorney General and the consent of the court before which any such action is pending, may make an offer of judgment in settlement of any such claim. The commissioner and the state shall not be liable in damages for injury to person or property when such injury occurred on any highway or part thereof abandoned by the state or on any portion of a highway not a state highway but connecting with or crossing a state highway, which portion is not within the traveled portion of such state highway. The requirement of notice specified in this section shall be deemed complied with if an action is commenced, by a writ and complaint setting forth the injury and a general description of the same and of the cause

highway statute; and (2) the sufficiency of the evidence to prove constructive notice under that statute. Following our grant of certification,[2] the defendant, Emil Frankel, the commissioner of transportation, appeals from the judgment of the Appellate Court affirming the judgment of the trial court awarding damages to the plaintiff, Carolyn Ormsby. The defendant claims that certain evidence of prior icing conditions on the highway in question, and certain evidence of an accident one day prior to the plaintiff's accident on that same highway, were inadmissible to prove constructive notice of the specific ice conditions that caused the plaintiff's injuries. The defendant also claims that there was insufficient evidence for the jury to conclude that the defendant had constructive notice of the icing conditions.[3] We affirm the judgment of the Appellate Court.[4]

---

thereof and of the time and place of its occurrence, within the time limited for the giving of such notice."

[2] We granted certification limited to the following issues:

"1. Did the Appellate Court properly conclude that evidence of recurring icing conditions in the year prior to the plaintiff's accident was relevant and admissible to prove constructive notice of the specific ice condition that caused the plaintiff's injury?

"2. Did the Appellate Court properly conclude that evidence of an accident one day prior to the plaintiff's accident, which was caused by a recurring icing condition, was properly admitted to prove constructive notice of the specific ice conditions that caused the plaintiff's injury where the evidence established that the condition did not exist at least most of the period between the two accidents?

"3. Did the Appellate Court properly conclude that there was sufficient evidence for the jury to conclude that the defendant had constructive notice of the icing condition?" *Ormsby* v. *Frankel*, 250 Conn. 926, 926–27, 738 A.2d 658 (1999).

[3] On appeal, the defendant also claimed that the trial court improperly had charged the jury regarding General Statutes § 14-314 and improperly had charged the jury on the issues of notice, the melting and refreezing of ice, the defendant's duty to inspect, and the emergency doctrine. *Ormsby* v. *Frankel*, 54 Conn. App. 98, 113, 734 A.2d 575 (1999). We, however, did not certify these issues and, consequently, they are not before us on this appeal.

[4] The plaintiff filed, pursuant to Practice Book § 84-11, three alternate grounds and adverse rulings upon which to affirm the judgment: "(1) Contrary to the holding of the Appellate Court, the trial court properly allowed testimony by [Christina] Russell that, when . . . Russell called the police

The plaintiff filed a single count complaint alleging that the defendant breached his statutory duty under § 13a-144 to keep the highway upon which the plaintiff was injured reasonably safe. After a jury trial, the defendant was found to have breached this duty, the plaintiff was awarded damages, and the trial court rendered judgment accordingly. On appeal, the Appellate Court determined, inter alia, that: (1) the trial court properly had admitted evidence regarding prior icy conditions on the highway and a prior accident at that same location; and (2) there was sufficient evidence for the jury to have found that the defendant had constructive notice of the alleged defect. *Ormsby* v. *Frankel*, 54 Conn. App. 98, 101, 734 A.2d 575 (1999). This appeal followed.

The opinion of the Appellate Court sets forth the following relevant facts that the jury reasonably could have found. "On Saturday, February 20, 1993, between 2 and 3 p.m., the plaintiff was driving westbound on Route 6 in Farmington over Rattlesnake Mountain. Route 6 is a state highway and, as such, the department of transportation (department) is responsible for its maintenance. The plaintiff was driving at approximately forty-five miles per hour in a forty-five mile per hour zone. In the course of her descent down Rattlesnake Mountain, she approached a lefthand curve. A department warning sign on the side of the highway, placed prior to the curve, informed drivers of the curve. Additionally, there was an advisory speed placard indicating

dispatcher to report the icing condition, the dispatcher said she would call the [department of transportation]; (2) The admission of . . . Russell's testimony concerning the dispatcher's statement was harmless error because if this case were to be remanded for retrial the Connecticut Code of Evidence, [§ 8-3 (4)], will be in effect and will allow . . . Russell's testimony to be admitted again; (3) There was sufficient properly admitted evidence to support the specific jury finding of actual notice."

In view of our conclusion that the Appellate Court properly affirmed the trial court's judgment, we need not consider these alternate grounds.

that the recommended speed in the curve was forty miles per hour.

"On February 20, 1993, the temperature was below freezing and the road was dry. The plaintiff entered the curve and encountered a large ice patch approximately 250 feet long in the westbound lane that had not been sanded or salted by the department. The plaintiff had no warning that the ice patch was on the curve and could not see it prior to encountering it. After the plaintiff crossed the ice patch, she lost control of her car and tapped her brakes two or three times to attempt to regain control of her vehicle. Her efforts were unsuccessful and she attempted to steer to regain control. Her car fishtailed approximately 180 degrees and ended up in the eastbound lane where her car collided with another vehicle driving eastbound up the hill. The plaintiff suffered serious injuries as a result of the collision." Id., 100.

Before addressing the defendant's claim, we first set out certain legal principles that guide our review of the defendant's appeal. "It is well established that [t]he trial court has broad discretion in ruling on the admissibility of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . *State* v. *Sullivan*, 244 Conn. 640, 646, 712 A.2d 919 (1998); *State* v. *Coleman*, 241 Conn. 784, 789, 699 A.2d 91 (1997); *Potter* v. *Chicago Pneumatic Tool Co.*, 241 Conn. 199, 259, 694 A.2d 1319 (1997)." (Internal quotation marks omitted.) *Claveloux* v. *Downtown Racquet Club Associates*, 246 Conn. 626, 628–29, 717 A.2d 1205 (1998).

To prove a breach of statutory duty under this state's defective highway statutes,[5] the plaintiff must prove by

---

[5] This court has held that "there is no material difference in the obligation imposed on the state by § 13a-144 and that imposed on municipalities by [General Statutes] § 13a-149." (Internal quotation marks omitted.) *Hall* v. *Burns*, 213 Conn. 446, 477, 596 A.2d 10 (1990).

a preponderance of the evidence: "(1) that the highway was defective as claimed; (2) that the defendant actually knew of the particular defect or that, in the exercise of its supervision of highways in the city, it should have known of that defect; (3) that the defendant, having actual or constructive knowledge of this defect, failed to remedy it having had a reasonable time, under all the circumstances, to do so; and (4) that the defect must have been the sole proximate cause of the injuries and damages claimed, which means that the plaintiff must prove freedom from contributory negligence. *Lukas* v. *New Haven*, 184 Conn. 205, 207, 439 A.2d 949 (1981); accord *Janow* v. *Ansonia*, 11 Conn. App. 1, 2–3, 525 A.2d 966 (1987)." (Internal quotation marks omitted.) *Prato* v. *New Haven*, 246 Conn. 638, 642, 717 A.2d 1216 (1998).

Although we never explicitly have stated the rationale underlying these statutory requirements, we take the opportunity to do so now, because that rationale informs our disposition of the evidentiary issues involved in the present case. We agree with the defendant that his statutory obligation under § 13a-144 to keep the highway safe from defects is a reactive obligation, not an anticipatory obligation. That is, the defendant's obligation under § 13a-144 is to remedy a highway defect once he: (1) has actual notice of a specific defect; or (2) is deemed to have constructive notice of a specific defect. As we have noted previously, his obligation does not sound in general negligence. See, e.g., *White* v. *Burns*, 213 Conn. 307, 322–23, 567 A.2d 1195 (1990); *Lamb* v. *Burns*, 202 Conn. 158, 169, 520 A.2d 190 (1987); *McManus* v. *Jarvis*, 128 Conn. 707, 710, 22 A.2d 857 (1938); *Shirlock* v. *MacDonald*, 121 Conn. 611, 613, 186 A. 562 (1936); *Dunn* v. *MacDonald*, 110 Conn. 68, 77, 147 A. 26 (1929). Thus, the defendant's statutory obligation is to act reasonably in remedying a defect of which he has actual or constructive notice. Absent such actual

or constructive notice, his obligation does not extend to inspecting streets in order to prevent dangerous conditions, even when it is reasonably likely that such conditions may occur. See *Prato* v. *New Haven*, supra, 246 Conn. 646.

With this background in mind, we turn to the defendant's specific claims, namely, that the Appellate Court improperly determined that: (1) the trial court properly had admitted certain evidence of prior icing conditions; (2) the trial court properly had admitted certain evidence of a prior accident at the same location where the plaintiff was injured; and (3) there was sufficient evidence for the jury to conclude that the defendant had constructive notice of the specific icing conditions that led to the plaintiff's injuries. We disagree with the defendant's claims.

I

The defendant claims that certain evidence of prior icing conditions at the same location where the plaintiff's accident occurred was improperly admitted by the trial court to prove constructive notice of the specific ice conditions that caused the plaintiff's injuries. He contends not only that the evidence of prior icing conditions on Route 6 was insufficient to prove constructive notice, but also that this evidence was irrelevant to the question of constructive notice. Specifically, the defendant argues that the trial court improperly admitted testimony from employees of the Farmington police department that in the year before the plaintiff's accident it was common to see ice on the road in question, and that the department had received complaints about this road more than other areas.[6] In addition, the defen-

[6] The plaintiff introduced the testimony of Officer Charles Pritchard and Corporal Paul Lemieux, and dispatchers Richard Ross and Lisa Fournier of the Farmington police department. Both officers testified that from 1992 through February 1993, they had observed similar icing conditions as those present on February 20, 1993, at the location where the plaintiff's accident occurred. They also testified that it was a very common thing to observe

dant maintains that this evidence of prior icing conditions was improperly admitted to show that: (1) because this area of the road was prone to icing conditions, there must have been ice on the road on the day that the plaintiff was injured; or (2) because the defendant knew that the area was prone to icing conditions, the defendant should have anticipated the ice on February 20, 1993. We are unpersuaded.

We agree with the defendant that proof of prior icing conditions alone does not satisfy the notice requirement of § 13a-144. "This court previously has held that [t]he notice, actual or implied, of a highway defect causing injuries which a municipality must receive as a condition precedent [to] liability for those injuries, is notice of the defect itself which occasioned the injury, and not merely of conditions naturally productive of that defect and subsequently in fact producing it. Notice of another defect, or of the existence of a cause likely to produce the defect, is not sufficient. . . . *Carl* v. *New Haven*, 93 Conn. 622, 628, 107 A. 502 (1919)." (Internal quotation marks omitted.) *Prato* v. *New Haven*, supra, 246 Conn. 642; see also *DeSantis* v. *New England Furniture Co.*, 132 Conn. 134, 138, 42 A.2d 792 (1945); *Scoville* v. *West Hartford*, 131 Conn. 239, 242, 38 A.2d 681 (1944). In other words, the fact that the section of

ice in that area. Ross testified that icing conditions in the area were a common occurrence. Fournier testified that she received calls regarding icing conditions on Route 6 "more than most places."

The defendant objected to the introduction of testimony of prior icing conditions on Route 6 on grounds of relevance. The defendant argued that because the evidence was introduced to prove constructive notice, only evidence of the very defect in question was relevant. The plaintiff argued that evidence of prior icing conditions was relevant to determine how much time would be sufficient for the defendant to have constructive notice of the defect in question and to have remedied it. The trial court overruled the objection to the evidence. The trial court stated: "[The] issue of the prior awareness of similar defects does not prove knowledge of this particular defect . . . but I think it's relevant to the issue of notice and relevant to the issue of the time period as argued."

the road in the present case often developed ice in the past would be legally insufficient to prove that there was ice on Route 6 on February 20, 1993, or that the defendant had constructive notice about any ice that was in fact present on February 20, 1993. See, e.g., *Prato* v. *New Haven*, supra, 644; *Aaronson* v. *New Haven*, 94 Conn. 690, 695–96, 110 A.2d 872 (1920).

We disagree, however, with the defendant that the evidence of prior icing conditions was irrelevant to the issue of constructive notice. In *Aaronson* v. *New Haven*, supra, 94 Conn. 691, the plaintiff brought an action for damages to his car when he ran over a toppled silent policeman that was lying in the road. Actual notice of the toppled policeman had been given to the city one-half hour before the accident. Id., 693. The jury returned a general verdict for the plaintiff. Id. This court determined that the trial court properly had denied a motion for a new trial on the ground that the verdict was against the evidence. Id. We concluded that there was sufficient evidence for the jury to have found that the city had actual notice of the toppled silent policeman. Id. We also concluded that evidence of the prior accidents caused by the displacement of the silent policeman was admissible on the quesiton of the length of time that would have been reasonable to remedy the defect. Id. "[W]e think the evidence of the witness . . . to the effect that other accidents of which the city had notice had been caused by this silent policeman being displaced, *was admissible as tending to show knowledge of conditions affecting the degree of diligence which might reasonably be required of the defendant in removing it from the traveled roadway after notice.*" (Emphasis added.) Id.

In the present case, the plaintiff offered the evidence of prior icing conditions for a limited purpose not inconsistent with *Aaronson*, namely, the timing aspect of constructive notice. See, e.g., *Prato* v. *New Haven*, supra, 246 Conn. 644–45 (length of time sufficient for defendant to have constructive notice of defect is issue of fact). The plaintiff stated during her offer of proof: "The fact that an area is prone to icing . . . relates to the length of time required

for the condition to exist before it would be reasonable to require the defendant to remedy it. That is the purpose of the offer."

The evidence of prior icing conditions was relevant to establish a more truncated time period than would otherwise be permitted during which the defendant should have discovered the particular icy condition on that day. For example, absent actual notice of the specific icy condition on that day, if the icy condition had existed for a certain number of hours before the accident, evidence of prior similar conditions at that general area would be relevant to the jury's determination regarding whether that number of hours was long enough to charge the defendant with constructive notice of that condition. In the present case, the plaintiff's evidence was that the particular ice that caused the accident had existed for two and one-half hours before the accident occurred. Evidence of prior icing conditions was relevant to the jury's determination that this was a sufficient amount of time for the department to uncover and remedy the particular icy condition that caused the plaintiff's accident.

The trial court's statements during the plaintiff's offer of proof and its instructions to the jury made it clear that the evidence of prior icing conditions was offered and admitted into evidence for this proper limited purpose. During the plaintiff's offer of proof the court stated: "The charge will indicate that the state may be chargeable with notice of the particular defect had it exercised reasonable supervision over the highway within a reasonable period of time. . . . [The] issue of the prior awareness of similar defects does not prove knowledge of this particular defect . . . but I think it's relevant to the *issue of notice* and relevant to the *issue of the time period* as argued." (Emphasis added.)

The trial court properly instructed the jury in its charge that the evidence could not be used to prove the defect itself. The court stated: "Now, notice by the defendant of . . . icy conditions at other times on Route 6 is *not proof of the very defect complained of* in this case . . . . Absent actual notice, the duty to make a reasonable inspection . . . depends upon the

nature of the defect and the *length of time it existed*." (Emphasis added.)

The trial court, moreover, gave an additional proper limiting instruction during the jury charge. The court stated: "Now, ladies and gentlemen, you heard testimony concerning conditions on Route 6 . . . on February 19, 1993 and at other earlier times. I want to address the purposes for which you may properly use this evidence as you evaluate the plaintiff's claim. I do this in light of what is known as the doctrine of limited admissibility. This legal rule holds that some items of evidence may be properly considered by the jury for some purposes but not for other purposes. . . . If you find [that the ice patch alleged to be present on Route 6 on February 19, 1993] was not the same ice patch but a wholly new and different ice patch, you may not consider it as evidence of actual notice but you may consider it for the limited purpose of determining whether and when the defendant should have known of the ice patch which the plaintiff claims caused her accident on February 20, 1993. That is, you may consider it only on the issue of constructive notice if you find that it was not the same ice patch."

The evidence of prior icing conditions was relevant to proof of constructive notice of the defect. The trial court's instructions to the jury properly limited the use of this evidence. The trial court, therefore, did not commit an abuse of discretion by admitting this evidence.

## II

The defendant next claims that certain evidence of an accident one day prior to the plaintiff's accident, at the same location, was improperly admitted by the trial court to prove constructive notice of the specific ice conditions that caused the plaintiff's injuries. The defendant contends that where conditions are transitory, proof of similar conditions at other times is irrelevant.

According to the defendant, the only basis on which the plaintiff properly could have introduced the evidence of the prior accident would have been to establish that the same patch of ice caused both accidents. We disagree.

The plaintiff introduced the testimony of Corporal Paul Lemieux of the Farmington police department regarding a one car accident that took place on February 19, 1993, involving Matthew Eagan. Lemieux testified that: (1) the accidents involving the plaintiff and Eagan had occurred at approximately the same time of day; (2) the ice conditions and the ice patch that he observed on February 19 and February 20 had been the same; and (3) the ice patches on both days had been in the same location. The plaintiff sought to introduce this evidence to prove that the defendant had notice of the dangerous condition that caused the plaintiff's accident.

The defendant objected to this testimony, arguing that the February 20, 1993 ice patch could not have been the same ice patch that caused Eagan's accident on February 19, 1993. The defendant argued that the two ice patches were not the same because the earlier ice patch had been treated with sand and several thousand cars had passed over the road, without incident, between the time of the two accidents. According to the defendant, because the ice patches were not the same, or substantially similar, this evidence was inadmissible. See, e.g., *Hall* v. *Burns*, 213 Conn. 446, 452, 569 A.2d 10 (1990).[7] The trial court determined that

---

[7] Under *Hall* v. *Burns*, supra, 213 Conn. 452, "[a] party attempting to offer evidence of prior accidents or evidence of the experience of others has the burden of proving that the circumstances were substantially the same as those under which the plaintiff was injured, and that the use by others was substantially similar to that of the plaintiff. . . . Moreover, [e]vidence of prior occurrences will be admitted only if the proffering party first lays a sufficient foundation of substantial similarity of conditions between the immediate and the prior happenings." (Citations omitted; internal quotation marks omitted.)

the evidence was admissible for notice purposes and overruled the defendant's objection. Relying on the Appellate Court decisions in *Claveloux* v. *Downtown Racquet Club Associates*, 44 Conn. App. 691, 695–97, 691 A.2d 1112 (1997), rev'd, 256 Conn. 626, 717 A.2d 1205 (1998), and *Martins* v. *Connecticut Light & Power Co.*, 35 Conn. App. 212, 645 A.2d 557, cert. denied, 231 Conn. 915, 648 A.2d 154 (1994), the trial court concluded that: "[U]nder *Martins* the appropriate inquiry was not whether the prior accidents were substantially similar to the accident here but rather whether the prior accidents would call the defendant's attention to the dangerous condition, *held to a less rigorous standard.*" (Emphasis added; internal quotation marks omitted.)

This claim presents us with the necessity of resolving an issue that we previously have noted, but have not found necessary to decide, namely, in an action brought under § 13a-144, what is the standard by which a trial court should gauge the admissibility of evidence of a prior accident offered to prove constructive notice of the particular defect in question? More precisely, the question is whether the circumstances of the prior accident must be essentially *the same* as the accident in question, or whether a more relaxed standard is appropriate. We conclude that the standard to be employed is the more relaxed standard previously articulated in *Claveloux* v. *Downtown Racquet Club Associates*, supra, 44 Conn. App. 696, and *Martins* v. *Connecticut Light & Power Co.*, supra, 35 Conn. App. 218.

In *Hall* v. *Burns*, supra, 213 Conn. 449, an action under § 13a-144, the plaintiff was injured when the car that her mother was driving was struck by another vehicle. The mother testified that she had not seen the other vehicle because her view had been obstructed by overgrown brush. Id. The plaintiff attempted to introduce evidence of another accident at the same intersection to prove the existence of a defect. Id., 451. The

trial court rejected the evidence of the prior accident because it found that the causes of the two accidents were not substantially similar. Id., 454. The trial court found that, although the plaintiff claimed that over-grown brush was the cause of her accident, the previous accident was due, in part, to the driver's own negligence, and there was no evidence that an obstructed view played a factor in that accident. Id.

On appeal, we affirmed the trial court's ruling. Id., 456. In doing so, we stated: "Evidence of other similar accidents is admissible to prove the existence of a particular physical condition, situation, or defect. . . . A party attempting to offer evidence of prior accidents or evidence of the experience of others has the burden of proving that *the circumstances were substantially the same as those under which the plaintiff was injured, and that the use by others was substantially similar to that of the plaintiff.* . . . Moreover . . . the proffering party [must lay] a sufficient foundation of *substantial similarity of conditions* between the immediate and the prior happenings." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 451–52.

We further noted: "In *Facey* v. *Merkle,* [146 Conn. 129, 136, 148 A.2d 261 (1959)], this court stated that in laying the foundation that the material conditions were substantially identical, two aspects are involved. One is that the [place] itself must have been substantially in the same condition. The other is that the use made of it must have been substantially identical in all material respects with the use which was actually involved in the case and was reasonably to be anticipated. Id., 136." (Internal quotation marks omitted.) *Hall* v. *Burns,* supra, 213 Conn. 453. The defendant in *Hall* argued that, although the intersection was in the same condition on both nights, the accidents were not " 'substantially similar' " because the plaintiff failed to establish that

both accidents resulted from or involved the same cause, i.e., overgrown brush. Id.

This court analyzed whether the prior accident was substantially similar by looking at the second prong of the *Facey* analysis—whether the use made of the place of the accident was substantially identical in all material respects. We determined that the plaintiff had failed to prove that the two accidents were the result of the same cause, i.e., overgrown brush; id., 454; although we also recognized that "this court has never decided that, in order to be admissible, there must be evidence that the prior accident resulted from the same cause as the present accident . . . ." Id., 454–55. Given the facts of the case, we determined that it was not an abuse of discretion for the trial court to have excluded the evidence of the prior accident. Id., 455–56. Thus, the question of admissibility of a prior accident is, in the terms of *Hall* v. *Burns*, supra, 213 Conn. 453, a question of the standard under which the trial court must gauge the "substantial similarity" of the circumstances and conditions of the prior accident.

In the present case, in her offer of proof the plaintiff made it clear that she was introducing the evidence, not to prove the defect itself, but solely to prove notice of the defect. She stated: "Evidence of . . . Eagan's accident is being offered to prove that the defendant had notice of the dangerous and defective condition of the road prior to the plaintiff's accident. Evidence of other similar accidents is admissible if offered to prove notice." Relying on *Martins* v. *Connecticut Light & Power Co.*, supra, 35 Conn. App. 212, the plaintiff argued that "since the prior accident was offered to show notice of a dangerous condition, such [accident] *need only be such as to call a defendant's attention to the dangerous situation.*" (Emphasis added.)

In *Martins* v. *Connecticut Light & Power Co.*, supra, 35 Conn. App. 214, the plaintiff brought a negligence

action against the defendant electric company for the death of her husband. The plaintiff's husband had received a fatal electric shock when an excavating machine on which he was working came into contact with the defendant's uninsulated overhead wires. Id. At trial, the plaintiff unsuccessfully attempted to introduce evidence of prior accidents involving the uninsulated overhead wires. Id. The plaintiff claimed that the evidence was relevant to show that the defendant knew or should have known of the dangers of its wires. Id., 215. The evidence was not introduced to prove the existence of the defect itself. Id. The Appellate Court reversed, determining that the trial court had abused its discretion in excluding one of the prior accidents. Id., 222. The Appellate Court concluded: "The requirement of a substantially similar condition is lessened when the evidence is offered to show notice of a dangerous condition. In such a case, the prior accidents need only be such as [would] call [the] defendant's attention to the dangerous situation that resulted in the litigated accident. C. McCormick, Evidence (4th Ed. 1992) c. 18, § 200, p. 848; see also annot., 21 A.L.R.4th 472 (1983)." (Internal quotation marks omitted.) *Martins* v. *Connecticut Light & Power Co.*, supra, 217.

The Appellate Court applied this standard three years later when it reversed the trial court in *Claveloux* v. *Downtown Racquet Club Associates*, supra, 44 Conn. App. 691. In *Claveloux*, the plaintiff brought an action against the defendants for injuries he had received when he slipped on one of their racquetball courts during a match, which had left him paralyzed. Id., 693. At the close of the liability phase of the plaintiff's case, the trial court directed a verdict for the defendants. Id. The plaintiff claimed that the trial court improperly had

excluded evidence of prior incidents[8] because the court found that they were not substantially similar to the slipping incident at issue. Id., 694. The trial court determined that the prior incidents of slippery spots on the courts were not substantially similar because: (1) they had occurred on a different court; (2) they had occurred on a different day; (3) they had occurred while the plaintiff was warming up, and not while he was in the middle of a match; and (4) the other incidents had been caused by a foreign substance on the floor, a claim not made by the plaintiff in this case. Id.

The Appellate Court reversed the trial court and ordered a new trial, concluding that the trial court had applied an incorrect standard in determining the admissibility of the prior incidents. Id., 696. The Appellate Court stated that, under *Martins*, because the evidence was offered to prove that the defendants had notice of the dangerous condition that caused the plaintiff's fall, "the appropriate inquiry was not whether the prior accidents were 'substantially similar' to the accident here, but rather whether the prior accidents would call the defendants' attention to the dangerous condition, *a less rigorous standard.*" (Emphasis added.) Id.

The defendants then appealed to this court, and we reversed the Appellate Court. *Claveloux* v. *Downtown Racquet Club Associates*, supra, 246 Conn. 634. We concluded that the record was insufficient to establish an abuse of discretion by the trial court in its ruling to exclude the prior incidents evidence. Id. We stated: "It

---

[8] "[T]he plaintiff testified that on the day before the accident, while warming up for a racquetball game in another of the defendants' racquetball courts, both his racquetball partner and he slipped on the surface of the court. The plaintiff explained that both he and his partner had slipped on two different slippery spots on the floor, both of which seemed to be covered in a clear slippery oil. The plaintiff further testified that he reported this slipping problem to someone at the front desk of the club, and within a few minutes, a maintenance man came and mopped the entire court." *Claveloux* v. *Downtown Racquet Club Associates*, supra, 44 Conn. App. 694.

may be that, in appropriate circumstances, we, too, should adopt McCormick's view that, in exercising its discretion, a trial court, if evidence is offered solely to prove the defendant's notice of a defect or danger, should view evidence of similar incidents less critically than a proffer of evidence to prove the actual defect. We recognize that this issue is one that our case law has not addressed directly." Id., 632. We determined, however, that *Claveloux* was not the proper case to address that issue because: (1) the issue of law in question was not properly presented to the trial court; and (2) the record did not contain sufficient evidence with respect to the similarity between the plaintiff's accident and the prior incidents. Id.

The present case, however, provides us with the proper record upon which to decide the issue of whether to adopt a standard of "attenuated similarity" when a prior accident is offered solely for notice purposes.[9] We conclude that in an action brought under § 13a-144, when a party offers evidence of a prior accident in order to prove constructive notice of the particular defect in question, and not the defect itself, a more attenuated standard is appropriate. Under this standard, "[a] plaintiff attempting to introduce evidence of prior accidents must show that the circumstances of the other accidents were substantially similar to those

---

[9] First, the legal argument was properly presented to the court during the trial. The plaintiff's memorandum of law opposing the defendant's motion in limine to suppress the prior accident evidence presented the legal analysis of *Martins* v. *Connecticut Light & Power Co.*, supra, 35 Conn. App. 212, and *Claveloux* v. *Downtown Racquet Club Associates*, supra, 44 Conn. App. 691, as support for the introduction of the prior accident evidence solely for notice purposes. Second, the record contains sufficient evidence with respect to the similarity between the two accidents. The facts developed at trial revealed that "[t]he plaintiff's accident occurred at approximately the same time of day, under the same road conditions and at the same location as the prior accident. In addition, both vehicles were traveling at approximately the same rate of speed when the patch of ice caused them to crash." *Ormsby* v. *Frankel*, supra, 54 Conn. App. 105.

under which the plaintiff was injured. . . . The requirement of a substantially similar condition is lessened when the evidence is offered to show notice of a dangerous condition. In such a case, the prior accidents need only be such as [would] call [the] defendant's attention to the dangerous situation that resulted in the litigated accident. C. McCormick, [supra] § 200, p. 848; see also annot., 21 A.L.R.4th 472 (1983)." (Citations omitted; internal quotation marks omitted.) *Martins* v. *Connecticut Light & Power Co.*, supra, 35 Conn. App. 217. Moreover, consistent with our general jurisprudence on similar issues of admissibility, whether the evidence meets this standard is a matter for the trial court's discretion.

Adopting an attenuated similarity standard when evidence of a prior accident is introduced solely for notice purposes is appropriate for several reasons. First, this type of evidence is analogous to our settled law regarding prior similar condition evidence. The prior accident evidence in the present case, like the evidence of prior icing conditions on Route 6, was offered to bear on the timing of the defendant's obligation to respond to the defect. In other words, with evidence of a prior accident in the same area from the same general cause, the defendant was under a greater obligation to discover and respond to the defect. The trial court, moreover, gave a limiting instruction to ensure that the jury properly evaluated this evidence. The trial court stated: "You may consider [the accident on February 19, 1993] only on the issue of whether the defendant had notice of the allegedly defective condition of the road prior to [the] plaintiff's accident and for no other purpose."

We also agree with the Appellate Court that "[a] party should not be denied the right to prove every essential fact material to its cause of action by the most convincing evidence available . . . ." *Martins* v. *Connecticut Light & Power Co.*, supra, 35 Conn. App. 220. A prior

accident at the same location, under the same weather and road conditions, is certainly relevant to how much time was reasonable for the defendant to have responded to road conditions on February 20, 1993.

Applying this standard to the facts of this case, we conclude that the trial court did not abuse its discretion in admitting the evidence. As the Appellate Court stated: "The plaintiff's accident occurred at approximately the same time of day, under the same road conditions and at the same location as the prior accident." *Ormsby* v. *Frankel*, supra, 54 Conn. App. 105. In addition, the trial court had before it sufficient evidence that the use made of the road by the two parties was substantially similar because the plaintiff produced evidence that "both vehicles were traveling at approximately the same rate of speed when the patch of ice caused them to crash." Id. These factors were sufficient for the trial court to have concluded that the prior accident was such as to call the defendant's attention to the dangerous condition that resulted in the accident involving the plaintiff in the present case.

### III

We next address the defendant's claim that there was insufficient evidence for the jury to have concluded that the defendant had constructive notice of the icing conditions that led to the plaintiff's injuries. The plaintiff presented evidence of prior icing conditions and a prior accident at the same location one day earlier, an internal department memorandum and a snow and ice policy manual that documented procedures for dealing with winter weather conditions, testimony that the location of the plaintiff's accident was a problem area, and evidence that the department's garage was in close proximity to the accident. We conclude that this evidence was sufficient to prove constructive notice.

More specifically, the Appellate Court summarized the following evidence presented at trial, from which the jury determined that the defendant had constructive notice of the defect in question. "The jury had before it evidence of the Eagan accident, which occurred only twenty-four hours prior to the plaintiff's accident. The Eagan accident, as previously noted, was remarkably similar to the plaintiff's. In fact, when Richard Ross, the Farmington police dispatcher, called the department regarding the ice patch on February 19, 1993, he told the department that, 'we have the usual icy condition on Route 6 just in the area of Reservoir Road.'

"An internal department memorandum regarding the plaintiff's notice of claim provides: 'The area in question is located in a shaded area and is sanded and monitored on a daily basis during the winter season.' Additionally, the department had a snow and ice policy manual that was also entered in evidence. Section 2.10 of the manual regarding isolated ice patches provides: 'When the main body of the travelway is bare, ice may form at isolated or disconnected locations following thawing, frost action or seepage. Wherever possible an attempt shall be made to eliminate these isolated ice patches at their source. Where this is not possible such ice patches must be kept thoroughly sanded. Hazardous conditions developing at such locations should be anticipated at the time of lowering temperatures and treated by sanding wet pavement areas in advance of actual ice formation. It is a function of the General Supervisor to investigate the causes of such ice formations and to eliminate the source.' . . . Paul Zagorski, general supervisor of the department's Farmington garage, originally testified that he did not consider the area of the accident a 'problem area,' but on direct examination the plaintiff asked him to repeat his deposition testimony to the same question. Zagorski, in his deposition, had stated: '[T]his was a more problem area.'

"The department's garage is approximately three miles from the accident site. The jury had evidence that the ice patch existed at least two and one-half hours prior to the plaintiff's accident. Zagorski admitted that, outside of business hours, the response time to a call would be within one hour." *Ormsby* v. *Frankel*, supra, 54 Conn. App. 111–12.

"[I]t is not the function of this court to sit as the seventh juror when we review the sufficiency of the evidence . . . rather, we must determine, in the light most favorable to sustaining the verdict, whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict . . . . *Purzycki* v. *Fairfield*, 244 Conn. 101, 112–13, 708 A.2d 937 (1998). In making this determination, [t]he evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable. . . . *Fink* v. *Golenbock*, [238 Conn. 183, 208, 680 A.2d 1243 (1996)]. In other words, [i]f the jury could reasonably have reached its conclusion, the verdict must stand, even if this court disagrees with it. . . . *Donner* v. *Kearse*, 234 Conn. 660, 681–82, 662 A.2d 1269 (1995); see *Trzcinski* v. *Richey*, 190 Conn. 285, 298, 460 A.2d 1269 (1983)." (Internal quotation marks omitted.) *Gaudio* v. *Griffin Health Services Corp.*, 249 Conn. 523, 534, 733 A.2d 197 (1999).

The central issue in the plaintiff's constructive notice argument was timing. As the Appellate Court noted: "Whether the two and one-half hour time period between Russell's discovery of the ice patch and the accident was a reasonable time for the department to discover the problem is a question solely for the jury. While there may be conflicting evidence as to what is a reasonable time, there is no lack of evidence to suggest that a failure to discover the defect in two and one-half hours is unreasonable." *Ormsby* v. *Frankel*, supra, 54 Conn. App. 112–13.

The response time of the defendant to react to a dangerous condition is a fact-specific determination. In *Prato* v. *New Haven,* supra, 246 Conn. 644, even though the city had every reason to anticipate that a bonfire would be set on July 3, since such a fire had been a neighborhood custom for the previous fifteen years, we concluded that the city did not have notice of the bonfire in question until it had been notified of the plaintiff's injury, which occurred roughly ninety seconds after the fire was set. We determined that ninety seconds was not long enough to provide notice to the city. Id. In *Aaronson* v. *New Haven,* supra, 94 Conn. 693, we determined that one-half hour was enough time to hold the city liable for the plaintiff's injuries, given that the city was aware that its silent policeman had been prone to toppling. Similarly, in the present case, the jury was presented with evidence that a dangerous ice condition existed on Route 6 for at least two and one-half hours prior to the plaintiff's accident. We are satisfied that the jury was justified in determining that, given all of the evidence presented at trial, this length of time was sufficient for the defendant to have had constructive notice of the defect.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.